FOR THE WESTERN DISTRICT OF PENNSYLVANIA
AT PITTSBURGH

| | | |
|---|---|---|
| IN RE: | ) | Bankruptcy No. 05-29306 |
| | ) | |
| Frederick H. LaBovick, | ) | Chapter 7 |
| a/k/a Fred LaBovick, | ) | |
| | ) | Judge M. Bruce McCullough |
| _____ | ) | |
| GE MONEY BANK, | ) | |
| | ) | |
| Plaintiff, | ) | ADV. NO. 05–03221-MBM |
| vs. | ) | |
| | ) | |
| Frederick H. LaBovick, | ) | |
| a/k/a Fred LaBovick, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

BRIEF OF DEFENDANT

I.  Procedural History

On July 20, 2005, Frederick H. LaBovick, a/k/a Fred LaBovick, Debtor, filed a Petition

in Bankruptcy (the "Petition") in this Honorable Court under Chapter 7 of the Bankruptcy Code.

In Schedule F of the Petition, Debtor listed an unsecured debt to "JC Penney - Account:

01776336741 - P.O. Box 960001 - Orlando, FL 32896-0001" - in the sum of $9,127.00 - for

consumer purchases.

The above mentioned debt was incurred by use of Debtor's JC Penney Company's charge

or credit card. [1]

On November 4, 2005, GE Money Bank ("Plaintiff") filed a Complaint against Debtor

("Complaint") in this Honorable Court to determine nondischargeability of debt pursuant to the

_____

[1]It is clear that for a number of years prior to the date when the above mentioned debt
was incurred, GE Money Bank serviced all JC Penney Company charge or credit cards.

provisions contained in 11 U.S.C.A. §523 (a) (2) (A) and ( C).

On or about December 8, 2005, Debtor, hereinafter referred to as "Defendant" filed, an Answer to the Complaint in which he admitted that between May 25, 2005, and July 1, 2005, he purchased merchandise and gift cards by use of his JC Penney Company Credit Card, (the "Credit Card") in which he denied the averments in the Complaint that the above mentioned debt should not be discharged and in which he sought attorney fees and costs.

Neither Plaintiff nor Defendant conducted any discovery or examination prior to the Trial in this Action.

This Honorable Court presided at the Trial of the instant Action, it being held on August 23, 2006.

## II.  Applicable Law and Burden of Proof

In 11 U.S.C.A. §523 (a) (2) (A), it is provided that a discharge under Section 727 of the Bankruptcy Code does not discharge an individual debtor from any debt for money, property, services, or an extension, renewal or refinancing of credit, to the extent obtained by false pretenses, a false representation or actual fraud, other than a statement reporting the debtor's or an insiders financial condition.

In 11 U.S.C.A. §523 ( C) (i)(I), it is provided that consumer debts owed to a single creditor and aggregating more than $500.00 for luxury goods or services incurred by an individual debtor on or within 90 days before the Order for Relief under this title are presumed to be nondischargeable.

In order for a creditor to prevail in an action brought under 11 U.S.C.A. §523 (a) (2) (A), the creditor must establish that:

"(1) Debtor made a representation;

(2) at the time of the representation, Debtor knew it to be false;

(3) Debtor made the representation with the intent and purpose of deceiving Plaintiff;

(4) Plaintiff relied upon the false representation; and

(5) Plaintiff suffered a loss as a proximate result of the representation."

Diamond v. Kolcum (In re Diamond), 285 F.3d 822, 827 (9th Cir. 2002); Mitchell v. Barnette (In re Barnette), 281 B.R. 869, 874 (Bankr. W.D. Pa. 2002); Citibank South Dakota N.A. vs. Rossiter (In re Rossiter), B.R. 2002 W.L. 31987288 (Bkrtcy. E.D. Pa.).

The party who or which objects to discharge has the burden of proving all of the aforementioned elements by a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 287-288 (1991); Citibank South Dakota, N.A. v. Rossiter, supra.

As with all exceptions to discharge, §523 (a) (2) (A) should be interpreted strictly against creditors and liberally in favor of debtors. Insurance Company v. North America v. Cohn (In re: Cohn), 54 F.3d 1008, 1113 (3d. Cir. 1995); Citibank South Dakota v. Rossiter, supra.

### III. Analysis of Evidence - Argument

At the Trial in this Action, Plaintiff attempted to sustain its burden of proof by offering into evidence three (3) account statements as to the Credit Card, by offering the testimony of Carl Jacobsen and by taking testimony of Defendant as for cross examination. [2]

The following is an analysis of the above mentioned testimony and of written exhibits which were admitted into evidence.

1.     Mr. Jacobsen is the Bankruptcy Legal Manager of Plaintiff and the custodian of Plaintiff's accounts and records as they relate to Defendant.

---

[2]Defendant did not order the transcript of these proceedings. The following analysis of relevant facts is a reflection of the pleadings, the stipulations and the notes taken at the Trial by counsel for Defendant.

2.      Mr. Jacobsen did not know when Defendant first made application for the Credit Card.

3.      Mr. Jacobsen did not have any such application.

4.      Mr. Jacobsen did not know when the Credit Card was initially issued to Defendant.

5.      Mr. Jacobsen did not have any records as to Defendant's Account or Account history for any period prior to April 2006.

6.      Mr. Jacobsen did have written evidence which suggested to him that Defendant had no history of being in default on his obligation to Plaintiff at any time prior to the date when Defendant filed his Petition under Chapter 7 of the Bankruptcy Code.

7.      Mr. Jacobsen was unable to produce any evidence that Defendant ever made a representation or a statement to Plaintiff that he could or could  not pay his obligation to Plaintiff.

8.      Mr. Jacobsen was unable to produce any evidence that Defendant ever exceeded his credit limit with Plaintiff even through the date of the Trial in this Action. In the Credit Card Statements produced by Plaintiff and by the examination of Defendant as and for cross, it was established that:

9.      Between May 17, 2006, and May 18, 2006, Defendant utilized the Credit Card to purchase consumer, non luxury goods, consisting of clothing and bedding items, the total cost of same being $1,735.46.

10.     The minimum payment due on June 21, 2005, from Defendant to Plaintiff on said $1,735.46 in purchases was $86.00.

11.     Defendant made such minimum payment in the sum of $86.00 on or about June 10, 2006.

12.     Between May 25, 2006, and June 8, 2006, Defendant utilized the Credit Card to purchase the following items in the following amounts:

    A.      A bed for his home in the sum of $1,208.03 pursuant to a promotion from JC Penney wherein no payment was required and no finance charges were due until February 2007.

    B.      Various cookware in the total sum of $883.85.

    C.      Men's clothing in the total sum of $156.92.

    D.      A gold chain which was a present to his wife in the sum of $285.05.

    E.      Four (4) gift cards totaling $2,250.00 which were for wedding and anniversary presents.

13.     Between June 23, 2006, and July 1, 2006, Defendant utilized the Credit Card to purchase the following items in the following amounts:

    A.      Two (2) gift cards totaling $1,250.00 which were for a gift to a former employee and for a wedding present.

    B.      A watch because Defendant's watch broke $171.71.

    C.      Household goods consisting of cookware and small electrics $689.47.

    D.      Clothing $560.08.

    E.      Bedding and a rug $124.58.

14.     Defendant first received the Credit Card in the mid 1970's.

15.     Until the date when he filed his Petition under Chapter 7 of the Bankruptcy Code, Defendant was never in default of his obligations under the Credit Card.

16.    At least until June 10, 2006, Defendant never made a payment on the Credit Card which was less than the minimum payment required by Plaintiff.

17.    At no time through the date when he filed his Petition under Chapter 7 of the Bankruptcy Code, did Defendant ever falsely represent to Plaintiff that he could pay on his obligations under the Credit Card.

18.    Defendant, a self employed home improvement contractor, working out of Allegheny County, Pennsylvania, earned gross income in 2005 through June 26, 2005, of $7,458.00.

19.    Defendant intended to utilize his income from self employment as a home improvement contractor, together with contributions from his wife, a realtor, who made in excess of $40,000.00 per year, to meet his minimum payment monthly obligations to Plaintiff under the Credit Card.

20.     On or about June 26, 2006, Defendant's only son, Stephen LaBovick ("Stephen") was arrested in Palm Beach, Florida and charged with vehicular homicide and hit and run driving.  The effect of this arrest on Defendant were as follows:

    A.    He had to travel to Florida in order to engage counsel for his son and in order to attempt to gain the release of Stephen from jail.

    B.    He had to guarantee the payment of $50,000.00 to the attorney which he hired for Stephen.

    C.    He subsequently paid not less than $40,000.00 of that attorney's fee from the proceeds of an investment account which was designed to protect him in his old age.

    D.    He was required to stay in Florida, in a house which was owned by his

wife because the condition for the release of Stephen on bond was house arrest and constant monitoring and because Defendant and his wife had to reside with Stephen in that house to provide necessities for him.

21.   As the result of the arrest of Stephen and of the necessity for Plaintiff to take up residency in Florida:

   A.   Defendant became faced with a situation which he did not cause and which was not contemplated until on or about June 29, 2005, the date when Defendant began to utilize the Credit Card at Boyton Beach, Florida.

   B.   Defendant was required to purchase a bed, bedding, cookware and other household goods for use by himself, by his wife and by Stephen at said house in Florida.

   C.   Defendant was forced to abandon his self employment as a home improvement contractor in Allegheny County, Pennsylvania.

   D.   Defendant was rendered unable to pay on the Credit Card.

As noted earlier in this Brief, Plaintiff had the burden to prove each of the above cited elements necessary for a holding that Defendant falsely represented that he could pay on the Credit Card and defrauded Plaintiff in his use of the Credit Card.

The only evidence which Plaintiff produced, without regard to its attempt to sustain its burden through the vehicle of calling of Defendant as and for cross examination was that between May 25, 206, and July 1, 2006, Defendant made in excess of $9,000.00 in purchases of goods through the use of the Credit Card.

The evidence which Plaintiff "produced" as the result of its calling of Defendant as and for cross examination was that Defendant was a long time holder of the Credit Card, that

Defendant never was in default of his obligations on the Credit Card, that Defendant never exceeded his Credit Card use limit, that Defendant never falsely represented to Plaintiff that he could pay on his obligations under the Credit Card, that Defendant, through his own income, and through the income of his wife, did previously and intended in the future to pay Plaintiff, that Defendant was met with a thoroughly unexpected catastrophe, to-wit, the arrest of his only son, in Florida, on charges, inter alia, of vehicular homicide, and that Defendant was required to abandon his home in Allegheny County, Pennsylvania and his self employment in Allegheny County, Pennsylvania to deal with that catastrophe and that Defendant was required to liquidate a substantial retirement fund in order to pay the fee of his son's attorney.

It is respectfully submitted, under the evidence elicited in this Action, that Plaintiff failed to meet its burden of proof under 11 U.S.C.A. §523(a) (2) (A) and that the portion of this Action under that Section must be dismissed.

It is also respectfully submitted that Defendant made no purchases of "luxury" goods aggregating more than $500.00 within 90 days before he filed his Petition in Bankruptcy. The only "luxury goods" which Plaintiff did purchase was a gold chain for his wife and a watch for him when his broke.

As such, that portion of this Action brought under 11 U.S.C.A. §523 ( C) (i)(I) must be dismissed.

Dated: September 21, 2006                    /S/ Louis R. Salamon
                                             Louis R. Salamon, Esquire
                                             Attorney for Defendant
                                             PA I.D. #10993
                                             450 Allegheny Building
                                             429 Forbes Avenue
                                             Pittsburgh, PA 15219
                                             (412) 261-0403