# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | : |
| | : |
| **FREDERICK H. LABOVICK,** | : |
|                 Debtor. | :   **Bankruptcy No. 05-29306-MBM** |
| ............................................................. | :............................................................. |
| **GE Money Bank,** | : |
|                 Plaintiff, | :   **Chapter 7** |
| | : |
|                 v. | : |
| | :   **Adversary No. 05-3221-MBM** |
| **Frederick H. LaBovick,** | : |
|                 Defendant. | : |

Appearances:    David C. Schattenstein, for GE Money Bank.
                     Louis R. Salamon, for Frederick LaBovick.

## MEMORANDUM OPINION

GE Money Bank brings the instant adversary action against Frederick LaBovick, the instant debtor (hereafter "the Debtor"), so as to have its pre-petition claim for $9,127.00 worth of pre-petition credit card charges by the Debtor declared nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) & (C). After notice and a trial on the matter held on August 23, 2006, and for all of the reasons set forth below, the Court determines that it shall enter judgment in the instant adversary proceeding **IN FAVOR OF THE DEBTOR** (that is, GE Money Bank's claim will not be excepted from discharge), and so the entirety of GE Money Bank's claim against the Debtor will be **DISCHARGED** by virtue of the Debtor's Chapter 7 discharge.

## STATEMENT OF FACTS

The parties agree that at all times the credit card which the Debtor used to incur charges which now comprise GE Money Bank's claim could only have

been, and thus was, used by the Debtor to make purchases at J.C. Penney. Although GE Money Bank contends in its complaint that the total amount of its claim against the Debtor equals 9,303.28, the parties now appear to stipulate, and the Court thus finds, that the amount of such claim equals $9,127.00, which amount is the balance at which the Debtor scheduled such indebtedness in his Bankruptcy Schedule F. The parties also appear to now agree, and the Court finds in any event, that the Debtor incurred $7,608.67 of such $9,127.00 in indebtedness within 60 days of the date upon which he filed for bankruptcy, which date was July 20, 2005.

Among the credit card charges by the Debtor within the 60-day period preceding bankruptcy were charges (a) totalling $3,500.00 for the purchase of 6 gift cards which were then given by the Debtor to others as presents, (b) for the purchase of a gold chain in the amount of $285.05, and (c) for the purchase of a watch in the amount of $171.71. The balance of the $7,608.67 worth of charges incurred within such 60-day period was for the purchase of a bed, various cookware and small electrical items, clothing, bedding, and a rug.

The Debtor testified at trial that he first opened the credit card account the balance in which constitutes the genesis for GE Money Bank's claim in the mid-1970's with a predecessor of GE Money Bank. The Debtor also testified that, until the date when he filed his bankruptcy petition on July 20, 2005, he was never in default with respect to making minimum monthly installment payments on any existing balance in his credit card account (i.e., he was never in default for roughly 30 years on such credit card account). With respect to the charges to

such credit card account that comprise GE Money Bank's claim – all of which, the parties agree, were incurred between May 17, 2005, and July 1, 2005 – the Debtor made the lone monthly installment payment on the same that came due prior to July 20, 2005.[1]

The Debtor, prior to July 20, 2005, was a long-time self-employed home improvement contractor who did work in the Allegheny County, Pennsylvania area. The Debtor operated his home improvement contracting business through his wholly-owned corporation, Princeton Builders, Inc. Princeton Builders, Inc. filed a voluntary Chapter 7 bankruptcy petition on July 18, 2005. The Debtor's Statement of Financial Affairs reflects that the Debtor earned gross income from his business (a) in 2005 through July 18, 2005, of $7,458, (b) in 2004 of $8,150, and (c) in 2003 of $9,553. The Debtor testified that his wife was a realtor who made approximately $40,000 per year, and that she occasionally assisted the Debtor in making his minimum monthly installment payments on his numerous credit cards.

The Debtor testified that he learned on or about June 26, 2005, that his only son, Stephen LaBovick (hereafter "Stephen"), was arrested, on or about the same date, in Florida and charged with vehicular homicide and hit-and-run driving. With respect to such arrest, the Debtor also testified that:

(a)    he traveled to Florida on June 28, 2005, in order to secure legal counsel

---

[1] According to GE Money Bank's trial exhibits, the first monthly installment payment for which the Debtor failed to make a payment came due on July 21, 2005, or one day subsequent to when the Debtor filed for bankruptcy.

3

    for Stephen so as to secure Stephen's release from jail;

(b) he learned on July 3, 2005, after attending a court hearing in Florida and then engaging in discussion with the legal counsel that he had secured for Stephen, that he would likely be able to obtain Stephen's release from jail by July 25, 2005 (after another court hearing on that date) on bond pending a trial (which trial the Debtor understood would take place roughly one year later) but only on the condition that Stephen, from July 25, 2005, going forward, remain in Florida and be under house arrest and constant monitoring;

(c) he decided at that time, that is on July 3, 2005, that both he and his wife would need to take up residence in Florida from July 25, 2005, going forward so that they could henceforth reside with Stephen so as to provide him with necessities while Stephen remained in their custody under house arrest;

(d) he decided, also on or shortly after July 3, 2005, that, as a consequence of his relocation to Florida, he could no longer maintain, and thus would need to abandon, his home improvement contracting business in Pennsylvania; and

(e) he thereafter relocated permanently to Florida, obtained Stephen's release under house arrest, and terminated his home improvement contracting business in Pennsylvania.

The Debtor testified that the house that he relocated to in Florida, which house is where he presently resides, is owned solely by his wife.

The Debtor testified that terminating his home improvement contracting business in Pennsylvania rendered him unable to make further minimum monthly installment payments on his numerous personal and business debts, thereby necessitating his filing a Chapter 7 bankruptcy petition for both himself and Princeton Builders, Inc.  The Debtor testified that he first consulted bankruptcy counsel on July 10, 2005.

## **DISCUSSION**

GE Money Bank predicates its action against the Debtor under § 523(a)(2)(A) entirely upon a contention that (a) the Debtor implicitly represented to GE Money Bank on each occasion that he used his credit card that he had both the ability and the intent to repay the debt consequently incurred, (b) such alleged implicit representations were false when they were made by the Debtor, and that said alleged false representations were made with the purpose of deceiving GE Money Bank, and (c) GE Money Bank justifiably relied on the aforesaid alleged implicit representations to its detriment, which detriment can be quantified in the amount of $9,127.00.  GE Money Bank also contends that at least $7,608.67 of its $9,127.00 claim against the Debtor is presumed to be nondischargeable pursuant to § 523(a)(2)(C) and, in particular, contends that $7,608.67 of said claim represents purchases of luxury goods made by the Debtor within § 523(a)(2)(C)'s 60-day presumptive period.

I.    **Pertinent law regarding § 523(a)(2)(A).**

11 U.S.C. § 523(a)(2)(A) provides, in pertinent part, as follows:

5

> (a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt–
>
> > (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by–
> >
> > > (A) false pretenses, a false representation, or actual fraud, *other than a statement respecting the debtor's or an insider's financial condition*.

11 U.S.C.A. § 523(a)(2)(A) (West 2004) (emphasis added). In order for a debt to be excepted from discharge under § 523(a)(2)(A), a creditor must prove the following elements by a preponderance of the evidence:

> (1) the debtor made ... [a] representation;
>
> (2) [at] the time of the representation, the debtor knew it to be false;
>
> (3) the debtor made the representation with the intent and purpose of deceiving the plaintiff;
>
> (4) the plaintiff ... [justifiably] relied on the representation ...; and
>
> (5) the plaintiff sustained a loss or damage as the proximate consequence of the representation having been made.

4 Collier on Bankruptcy, ¶¶ 523.08[1][d] at 523-44.9 to 44.10 (Bender 2006) (citing Field v. Mans, 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995), to the effect that reliance required of a creditor is justifiable rather than reasonable) & 523.08[1][e] at 523-45 to 46 (setting forth 5-part test); *see also, e.g.,* In re Homschek, 216 B.R. 748, 751 (Bankr.M.D.Pa. 1998) (same test); In re Scott, 294

B.R. 620, 628 (same test). Furthermore, the representation made by the debtor upon which the creditor predicates its action under § 523(a)(2)(A) cannot, consistent with the express language of said provision, pertain to said debtor's financial condition. See 11 U.S.C.A. § 523(a)(2)(A); 4 Collier on Bankruptcy, ¶ 523.08[1] at 523-44.7; Homschek, 216 B.R. at 752-753; In re Joelson, 307 B.R. 689, 692-693 (B.A.P. 10th Cir. 2004).

GE Money Bank cites several decisions in support of its position that a debtor makes implicit representations regarding his or her ability and intent to repay each time he or she uses a credit card, which implicit representations are subsequently actionable under § 523(a)(2)(A). Such decisions notwithstanding, many courts, including two which rendered decisions that are presently cited by GE Money Bank in its post-trial brief, reject said position. See In re Dougherty, 84 B.R. 653, 656-657 (B.A.P. 9th Cir. 1988) ("We decline to adopt the implied representation theory because it implies the existence of the representation and reliance elements in the above test. This violates the principle that creditors must prove each of the elements of a nondischargeability action"); In re Eashai, 167 B.R. 181, 184 (B.A.P. 9th Cir. 1994) (reaffirming Dougherty). In fact, the Court is aware of case authority for the proposition that a debtor's use of a credit card does not result in an implicit representation of any kind, let alone one that is actionable under § 523(a)(2)(A), see In re Alvi, 191 B.R. 724, 731-732 (Bankr.N.D.Ill. 1996). The Court also notes that, even among many of those courts that accept that use of a credit card results in an implicit representation regarding intent to repay, such courts reject the proposition that credit card use

results in an implicit representation regarding ability to repay, *see* Homschek, 216 B.R. at 752; In re Scocozzo, 220 B.R. 850, 852-853 (Bankr.M.D.Pa. 1998); In re Anastas, 94 F.3d 1280, 1285 (9th Cir. 1996). This Court is at least somewhat persuaded by the theory, and thus will accept for purposes of the instant adversary proceeding, that a debtor makes an implicit representation regarding his or her intent to repay each time he or she uses a credit card. However, this Court is precluded from holding that an implied representation by a debtor via credit card use regarding his or her ability to repay is actionable under § 523(a)(2)(A), even presupposing that the Court is persuaded that credit card use results in such an implied representation, because representations by a debtor of his or her ability to repay a debt respect said debtor's financial condition, which representations, by virtue of the express language of § 523(a)(2), are neither actionable in any event under § 523(a)(2)(A) nor actionable under § 523(a)(2)(B) unless in writing. *See* Homschek, 216 B.R. at 752-753; Citibank (S. Dakota), N.A. v. Michel, 220 B.R. 603, 605 (N.D.Ill. 1998); Anastas, 94 F.3d at 1285. Therefore, the Court finds that GE Money Bank preponderantly proves that the Debtor, on each occasion that he utilized his credit card, thereby represented to GE Money Bank that he intended to repay debts that were incurred by his usage of said credit card. However, the Court need not concern itself with any of the alleged implicit representations by the Debtor regarding his ability to repay since the same were not made in writing, which fact dictates a conclusion that said alleged representations are not actionable under either § 523(a)(2)(A) or (B).

With respect to the issues of falsity regarding a debtor's representation as to intent to repay and whether deceptive intent accompanies the same, a subjective rather than an objective standard must be utilized for purposes of § 523(a)(2)(A) (ie., whether a debtor's representation that he or she intends to repay is false must be measured subjectively rather than objectively). *See, e.g.,* In re Feld, 203 B.R. 360, 365 (Bankr.E.D.Pa. 1996) (subjective standard applies because U.S. Supreme Court in Field v. Mans "held that § 523(a)(2)(A) encompasses the common law tort action of fraudulent misrepresentation" and subjective standard prevails under the common law); Michel, 220 B.R. at 606 ("Under the common law–which governs the interpretation of § 523(a)(2)(A), *see* Field [v. Mans], 516 U.S. at 69 n.9, 116 S.Ct. at 443 n.9, fraud exists only if a speaker is *subjectively* aware that his statements are false or that they might be false"); Anastas, 94 F.3d at 1285-1286 ("the focus should not be on whether the debtor was hopelessly insolvent at the time he made the credit card charges [(ie., an objective standard) but rather] ... must be solely on whether the debtor maliciously and in bad faith incurred credit card debt with the intention of petitioning for bankruptcy and avoiding the debt [(ie., a subjective standard)]. "Obviously the [C]ourt must consider objective evidence that is probative of the debtor's intent to repay in addition to considering the debtor's demeanor, but the ultimate inquiry still seeks to determine the debtor's subjective intent." Michel, 220 B.R. at 606.

II.     **Pertinent law regarding § 523(a)(2)(C).**

> 11 U.S.C. § 523(a)(2)(C) provides, in pertinent part, as follows:
>
> [C]onsumer debts owed to a single creditor and aggregating more than ... [$1,225] for "luxury goods or services" incurred by an individual debtor on or within 60 days before the order for relief under this title, or cash advances aggregating more than ... [$1,225] that are extensions of consumer credit under an open end credit plan obtained by an individual debtor on or within 60 days before the order for relief under this title, are presumed to be nondischargeable; "luxury goods or services" do not include goods or services reasonably acquired for the support or maintenance of the debtor or a dependent of the debtor; an extension of consumer credit under an open end credit plan is to be defined for purposes of this subparagraph as it is defined in the Consumer Credit Protection Act.

11 U.S.C.A. § 523(a)(2)(C) (West 2004) (actual dollar amount in quotation is $1,000 but footnote to quotation indicates that amount is adjusted to $1,225 for cases commenced on or after April 1, 2004, pursuant to 11 U.S.C. § 104). GE Money Bank bears the burden of proving, by a preponderance of the evidence, that the nondischargeability presumption under § 523(a)(2)(C) applies to its claim against the Debtor as it contends. *See* In re Koch, 83 B.R. 898, 902 (Bankr.E.D.Pa. 1988) (citing In re Faulk, 69 B.R. 743, 948 (Bankr.N.D.Ind. 1986), and In re Fenninger, 49 B.R. 307, 309-310 (Bankr.E.D.Pa. 1985)); Grogan v. Garner, 498 U.S. 279, 282-289, 111 S.Ct. 654, 656-661, 112 L.Ed.2d 755 (1991)

(overruling prior cases that held that clear and convincing evidence standard applied in matters involving nondischargeability under § 523(a)); 4 Collier on Bankruptcy, ¶ 523.04 at 523-24 (citing Grogan for same proposition).

If some portion of GE Money Bank's claim is ultimately presumed to be nondischargeable pursuant to § 523(a)(2)(C), said presumption can nevertheless be rebutted by the Debtor if he sufficiently demonstrates that such portion of such claim was not incurred in contemplation of his discharge in bankruptcy. *See* In re Orecchio, 109 B.R. 285, 289 (Bankr.S.D.Ohio 1989) (quoting from S.Rep. No. 98-65, 98th Cong. 1st Sess. 58 (1983)).  As for what level of proof will suffice to rebut § 523(a)(2)(C)'s nondischargeability presumption, the Debtor's "rebuttal evidence must raise a substantial doubt in the mind of the trier of fact as to the existence of the presumed [bad] intent" on the part of the Debtor.  *See* Id. at 290 (harmonizing Fed.R.Evid. 301, which rule is made applicable to bankruptcy cases via Fed.R.Bankr.P. 9017, with the legislative history of § 523(a)(2)(C)).  However, such evidence needed to rebut the Debtor's presumed bad intent need not rise to the same level of evidence which is required of GE Money Bank for its action under § 523(a)(2)(A) since the ultimate burden of proof or persuasion with respect to the Debtor's intent, or the risk of non-persuasion regarding said intent, does not, by virtue of the imposition of § 523(a)(2)(C)'s presumption, ever shift from GE Money Bank to the Debtor; instead, said ultimate burden remains at all times with GE Money Bank.  *See* Id. at 289-290; Koch, 83 B.R. at 902.

**III.    GE Money Bank's claim and § 523(a)(2)(C).**

The parties quarrel at length regarding whether what the Debtor

11

purchased by virtue of the $7,608.67 of credit card charges that he incurred within 60 days of July 20, 2005, when he filed for bankruptcy constitute luxury goods or services within the meaning of § 523(a)(2)(C). GE Money Bank contends that everything purchased by way of such credit card charges constitutes luxury goods, thereby activating § 523(a)(2)(C)'s nondischargeability presumption given that $7,608.67 exceeds such provision's $1,225 threshold. The Debtor, on the other hand, maintains that (a) only the $285.05 gold chain and the $171.71 watch constitute luxury goods, (b) such purchases total only $456.76, which total is far less than § 523(a)(2)(C)'s $1,225 threshold, and (c) § 523(a)(2)(C)'s nondischargeability presumption is thus not activated.

However, because the Court concludes, for the reasons set forth below, that the Debtor rebuts a presumption of nondischargeability via § 523(a)(2)(C) even in the event that such presumption were to attach to all or some portion of such $7,608.67 in credit card charges, the Court need not resolve whether, or in what amount, such presumption actually applies respecting such credit card charges. The preceding notwithstanding, the Court notes summarily, in the interest of being thorough, that, were it necessary, the Court would hold that (a) the gold chain and the watch, which were purchased for a total of $456.76, constitute luxury goods, (b) the 6 gift cards, which were purchased for a total of $3,500.00, constitute luxury goods, (c) the balance of such $7,608.67 in credit card charges were incurred to purchase items that do not constitute luxury goods or services, (d) $3,956.76 of the credit card charges made by the Debtor within 60 days of his filing for bankruptcy thus constitute charges incurred to purchase

luxury goods, and (e) § 523(a)(2)(C)'s nondischargeability presumption thus applies with respect to $3,956.76 of such credit card charges made by the Debtor.

     The Court holds that the Debtor rebuts a presumption of nondischargeability via § 523(a)(2)(C) in any event because, the Court holds in turn, the Debtor (a) raises a substantial doubt that any portion of the aforesaid $7,608.67 in credit card charges were incurred in contemplation of his discharge in bankruptcy, and (b) thus sufficiently demonstrates that no portion of such credit card charges were so incurred. The Court so holds, in large part, because (a) the Court finds to be very credible the testimony of the Debtor to the effect that (i) it was not until July 3, 2005, that, due to the unexpected turn of events regarding his son's arrest, he decided that it was necessary to, and that he thus would, relocate to Florida and terminate his home improvement contracting business in Pennsylvania, and (ii) prior to July 3, 2005, he had no intention of so relocating personally and terminating such business, and (b) all of the aforesaid $7,608.67 in credit card charges were incurred prior to July 3, 2005. With respect to such testimony upon which the Court so relies, the Court does not even understand GE Money Bank to dispute, but in any event GE Money Bank offered no evidence at trial to discredit, the substance of same. The closest that GE Money Bank comes to generating such a dispute is when GE Money Bank, in its post-trial brief, disputes the necessity of the actions that the Debtor took relative to Stephen's arrest, which actions, as set forth above, the Debtor testified that he thought were necessary – i.e., GE Money Bank disputes the necessity on

13

the Debtor's part of (a) traveling to Florida to secure Stephen's release from jail, (b) paying legal counsel to provide legal representation for Stephen, (c) consequently relocating to Florida, and (d) consequently terminating his home improvement contracting business in Pennsylvania. However, such dispute by GE Money Bank, the Court concludes, is largely if not entirely immaterial given that (a) a subjective rather than an objective standard, as set forth above, determines the existence or not of fraud, (b) what thus matters, for the purpose of assessing whether the Debtor actually incurred debt in contemplation of his bankruptcy discharge, is not whether such actions that he decided to take on or about July 3, 2005, were actually necessary but rather *whether he thought that such actions were necessary*, (c) GE Money Bank, as just set forth, does not even appear to dispute the Debtor's testimony *as to what he thought was necessary*, and (d) even if GE Money Bank does so dispute such mindset of the Debtor, the objective necessity of the Debtor's actions are, in any event, only relevant in helping to ascertain what such mindset actually was, which mindset, as mentioned above, the Court finds to be consistent with that to which the Debtor testified (i.e., the Court finds that the Debtor thought to be necessary those actions as set forth above that the Debtor actually took on or about July 3, 2005).

Also contributing to such substantial doubt, that is the doubt that the Court holds the Debtor raised that he incurred debt in contemplation of his bankruptcy discharge, is the Debtor's credible testimony that (a) he never failed to make a minimum monthly installment payment on his credit card account with either GE

14

Money Bank or its predecessor for the roughly 30 years that he had such credit card account, (b) his wife occasionally assisted him in making his minimum monthly installment payments on his numerous credit cards, (c) he thus thought, as he made charges to his credit cards, that he had the ability going forward to satisfy the resulting indebtedness on an installment basis notwithstanding his objectively poor financial status when such debt was incurred, and (d) he thus intended to repay such indebtedness when he incurred the same notwithstanding such objectively poor financial status.  GE Money Bank is correct, as it argues, that such objectively poor financial health of the Debtor constitutes some evidence – which the Court must consider – that would tend to discredit the Debtor's testimony both that he thought that he had such ability to repay and that he so intended to repay.  However, since, as has already been set forth several times herein, a subjective rather than an objective standard determines the existence or not of fraud, what is ultimately controlling in the instant analysis is not what an objectively reasonable person would think if such person were faced with the financial situation that the Debtor found himself in, but rather what the Debtor actually thought under such circumstances.  As set forth above, the Court finds the foregoing testimony of the Debtor to be credible and, thus, to be at least as likely as not to be true.

Because the Debtor succeeds in rebutting any presumption of nondischargeability via § 523(a)(2)(C) that might attach to all, or some portion of, the $7,608.67 of credit card charges that he incurred within 60 days of July 20, 2005, GE Money Bank, as it must with respect to the remaining $1,518.33

portion of its $9,127.00 claim (i.e., $9,127 - $7,608.67 = $1,518.33), will need to prove all elements of its action under § 523(a)(2)(A) in order to have such $7,608.67 claim excepted from the Debtor's Chapter 7 discharge.

### IV.  GE Money Bank's claim and § 523(a)(2)(A).

As set forth above, the Court accepts GE Money Bank's position that the Debtor, on each occasion that he utilized his credit card, thereby represented to GE Money Bank that he intended to repay debts that were incurred by his usage of said credit card.  Of course, concluding that the Debtor made such representations regarding his intent to repay only begins the analysis under § 523(a)(2)(A).  Such a conclusion says nothing, for instance, about whether such representations were false in the first instance, which issue goes to the second requisite element of the five-part test under § 523(a)(2)(A), to wit that the Debtor knew, when he made such representations, that they were false.

The Court holds that GE Money Bank does not establish the presence of the second element by a preponderance of the evidence because the Court concludes that it is at least equally likely that the Debtor's representations regarding his intent to repay were true when the Debtor made them.  The Court so concludes because of the presence of the testimonial evidence submitted by the Debtor that is discussed in the immediately preceding section of the instant opinion, that is such testimonial evidence that served to rebut a presumption of nondischargeability via § 523(a)(2)(C) with respect to the $7,608.67 of credit card charges that the Debtor incurred within 60 days of July 20, 2005.  The Court holds that such evidence also serves to establish that it is at least as likely as not

16

that (a) none of the credit card charges by the Debtor that figure into GE Money Bank's $9,127.00 claim were incurred in contemplation of the Debtor's discharge in bankruptcy, and (b) none of the Debtor's representations regarding his intent to repay were, accordingly, false when the Debtor made them.

Because the Court concludes that it is at least equally likely that the Debtor's representations regarding his intent to repay were true when the Debtor made them, the Court must also hold that GE Money Bank cannot preponderantly prove the third requisite element of the five-part test under § 523(a)(2)(A), to wit that the Debtor made such representations with deceptive intent.

Since GE Money Bank does not preponderantly prove the second and third requisite elements of the five-part test under § 523(a)(2)(A) with respect to any part of its $9,127.00 claim, no part of such claim can be excepted from the Debtor's Chapter 7 discharge under § 523(a)(2)(A). Because GE Money Bank's $9,127.00 claim cannot be excepted from the Debtor's Chapter 7 discharge under either § 523(a)(2)(A) or (C), said claim is accordingly discharged.

**CONCLUSION**

In light of the foregoing analysis, (a) judgment in the instant adversary proceeding shall be entered **IN FAVOR OF THE DEBTOR** (that is, GE Money Bank's claim will not be excepted from discharge), and (b) GE Money Bank's claim against the Debtor will consequently be discharged by virtue of the Debtor's Chapter 7 discharge.

An appropriate order will be entered.

                                        **BY THE COURT**

                                        /s/
                                        **M. BRUCE McCULLOUGH,**
                                        **U.S. Bankruptcy Judge**

**DATED:**   **November 15, 2006**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | : |
| | : |
| **FREDERICK H. LABOVICK,** | : |
| Debtor. | : **Bankruptcy No. 05-29306-MBM** |
| ............................................................. | :............................................................. |
| **GE Money Bank,** | : |
| Plaintiff, | : **Chapter 7** |
| | : |
| v. | : |
| | : **Adversary No. 05-3221-MBM** |
| **Frederick H. LaBovick,** | : |
| Defendant. | : |

## ORDER OF COURT

**AND NOW,** this **15th day** of **November, 2006**, upon consideration of the adversary complaint filed by GE Money Bank, wherein GE Money Bank seeks a determination that its $9,127.00 pre-petition claim against Frederick LaBovick, the instant debtor (hereafter "the Debtor"), is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) & (C); and for the reasons set forth in the accompanying Memorandum Opinion of the same date; and after notice and a trial on the matter held on August 23, 2006, it is **hereby ORDERED, ADJUDGED, AND DECREED** that (a) judgment in the instant adversary proceeding is rendered **IN FAVOR OF THE DEBTOR** (that is, GE Money Bank's claim will not be excepted from discharge), and (b) the entirety of GE Money Bank's claim against the Debtor is thus **DISCHARGED** by virtue of the Debtor's Chapter 7 discharge.

**BY THE COURT**

/s/
**M. BRUCE McCULLOUGH,**
**U.S. Bankruptcy Judge**

cm: Louis R. Salamon, Esq.
450 Allegheny Building
429 Forbes Avenue
Pittsburgh, PA   15219

David C. Shattenstein, Esq.
107 Commerce Way, Suite 100
Bethlehem, PA 18017

Carlota M. Bohm, Esq.
Three Gateway Center
401 Liberty Avenue, 22nd Floor
Pittsburgh, PA 15222-1005

2